UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cr-00313-HEA |
| | ) | |
| DARIUS CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' TRIAL BRIEF AND MOTIONS *IN LIMINE* FOR
PRETRIAL DETERMINATIONS OF ADMISSIBILITY**

Comes now the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Nino Przulj and Michael A. Reilly, Assistant United States Attorneys for said District, and respectfully submits its trial brief and motions *in limine*:

## I.    INTRODUCTION

A federal grand jury charged Defendant Darius Carter with aiding and abetting false statements in the straw purchase of a firearm, in violation of 18 U.S.C. §§ 2 and 922(a)(6) and conspiracy to make false statements in the straw purchase of firearm, in violation of 18 U.S.C. § 371. *See* Dkt. 1, Indictment.  The Defendant undertook a simple scheme: he enlisted the help of his mother, codefendant Hooks, and his friend and pawnshop employee, codefendant Dakota Carr, to buy two guns for Defendant Carter and his girlfriend from Piazza Jewelry and Pawn.  The scheme effectively shielded the intended possessors, Defendant Carter and his girlfriend, from having to complete the required background check.

The United States moves *in limine* as follows:

**(1) Motion in Limine to Admit Limited Evidence of the Investigatory Background.**

1

**(2) Motion in Limine to Admit Limited Evidence of Defendant's Probation Status That Prohibited Him From Possessing a Firearm.**

**(3) Motion in Limine to Permit Use of a Prior Conviction Less than Ten Years Old During Cross Examination of the Defendant.**

**(4) Motion in Limine to Preclude the Defendant from Introducing Evidence of the Indictment of Piazza Jewelry and Pawn in 2020.**

**(5) Motion in Limine to Preclude the Defendant from Seeking Jury Nullification.**

**(6) Motion in Limine to Preclude the Defendant from Commenting on the Punishment or Sentence.**

**(7) Motion in Limine to Preclude the Defendant from Relitigating Suppression Issues.**

**(8) Motion in Limine to Exclude Self-Serving Statements.**

**(9) Motion in Limine to Admit Business Records as Relevant, Self-Authenticating Non-Testimonial Documents Pursuant to Fed. R. Evid. 902 and 803(6).**

**(10)    Motion in Limine to Admit Social Media Records.**

In support of these Motions, the United States asserts as follows:

## II.    FACTUAL SUMMARY

On Halloween night, October 31, 2017, the St. John Police Department responded to 3566 Boswell Avenue where they found 20-year-old Sarah Mason, then seven months pregnant, dead from an apparent gunshot wound to the back of the head. While investigating her murder, the Bureau of Alcohol, Tobacco, and Firearms (ATF), along with local agencies, also began a related investigation into a firearm that fell out of Ms. Mason's right pocket when medical examiners arrived and moved her body. After ruling out her gun, a Glock 42 .380 caliber firearm (serial no. ACNF628), as the murder weapon, investigators learned that Defendant Carter's mother, codefendant Lynn Hooks, bought it a few months earlier. During that same transaction on July 14, 2017, at Piazza Jewelry and Pawn, a licensed firearms dealer, codefendant Hooks also bought

an HK VP9 9mm firearm (serial no. 224-021754).[1]  A search of the crime scene yielded a receipt for the purchase of the HK VP9 and the Glock 42 inside the Glock gun case in the master bedroom of the home that the Defendant and Ms. Mason shared.

At the time of purchase, codefendant Hooks falsely claimed that she bought the two guns for herself when, in fact, she bought the HK VP9 for Defendant Carter and the Glock 42 for Ms. Mason.  Codefendant Hooks answered affirmatively to the Firearms Transaction Record (Form 4473) that she was the actual transferee/buyer of the firearm:

> 11(a).  Are you the actual transferee/buyer of the firearm(s) listed on this form?  **Warning:  you are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**

At that time, the terms of Defendant Carter's probation for a felony drug offense prevented him from possessing a gun.  Similarly, Ms. Mason, then under the age of 21, could not legally purchase a handgun.  Defendant Carter and codefendant Hooks also enlisted codefendant Dakota Carr, an employee of Piazza Pawn, to assist in the sale by processing the necessary ATF Form 4473 at the point of sale and facilitating the transfer of the two guns.

Immediately after the purchase, Defendant Carter took possession of the HK VP9 while Ms. Mason took possession of the Glock 42.  Witness testimony corroborated by text messages will establish that both went to an unsupervised shooting range with their guns the very next day. Defendant Carter and Ms. Mason continued to possess the firearms until Ms. Mason's death.  To

---

[1] On June 15, 2017, Lynn Hooks placed three firearms on "layaway."  The firearms were (a) An HK model VP9 9mm firearm bearing serial number 224-021754;  (b) A Glock model 42 .380 caliber firearm bearing serial number ACNF628 (tiffany blue); and (c) A Glock model 42 .380 caliber firearm bearing serial number ACNH633.  On July 14, 2017, codefendant Hooks took possession of the HK pistol and the Glock model 42 (ACNF628) from Piazza, and  turned the firearms over to Defendant and Ms. Mason.  In November 2017, codefendant Hooks took possession of the third firearm, a Glock model 42 (ACNH633).

date, the HK VP9 has not been recovered by authorities and is not in codefendant Hooks' possession.

On July 31, 2018, Det. Randy Toedebusch obtained a state search warrant for Carter's cell phone.  Thereafter, Ken Nix, a forensic examiner, conducted a forensic extraction of the device that included SMS text messages.  The text messages establish that Carter intended to obtain possession of the HK pistol for himself and one of the Glock 42 pistols for Sarah Mason.

The following examples are illustrative of Carter's references to the HK firearm purchase to codefendant Carr.  Carter to Carr on July 12, 2017:  "How much do I owe."  Carter to Carr on June 26, 2017:  "Could I switch to that …"  (referencing a different color HK pistol depicted in an attached photograph).   On July 13, 2017, Carter texted codefendant Hooks "I was going to buy my gun today … I think they close at 6."  Consistent with evidence that Carter and Ms. Mason took the newly acquired firearms shooting on July 15, 2017, Carter texted Carr, "I still can't hear out of my left ear."

Consistent with his possession of the HK pistol, on July 27, 2017, Carter purchased an Inforce flashlight for the pistol from Piazza Jewelry and Pawn through codefendant Carr. On July 27, 2017, Carter texted Carr to purchase a flashlight for the HK pistol.  Carter asked "What's the light after Tac … Tax."  That same day, Carter posted a photo of the pistol with an Inforce flashlight on Instagram, further establishing Carter's possession and control of the firearm, and buttressing codefendant Carr's knowledge and participation in the transfer of the firearm to codefendant Hooks for Carter.   Referencing the pistol, Carter posted, "She is so beautiful … #hk #VPG #inforce #9mm."

### III.    LEGAL ANALYSIS AND MOTIONS IN LIMINE

#### A.  Elements of the Offenses

1. **False Statements in the Acquisition of a Firearm**

The Defendant is charged with violating 18 U.S.C. § 922(a)(6),[2] which provides in pertinent part that it shall be unlawful for any person "in connection with the acquisition or attempted acquisition of any firearm or ammunition from a … licensed dealer … knowingly to make any false or fictitious oral or written statement … intended or likely to deceive such … dealer … with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter." *See, e.g.*, *Abramski v. United States*, 573 U.S. 169, 191 (2014).

The Supreme Court has noted that "[n]o piece of information is more important under federal firearms law than the identity of a gun's purchaser—the person who acquires a gun as a result of a transaction with a licensed dealer." *Id*. at 193. That's because misrepresenting who is truly acquiring the firearm means "asking the dealer to verify the identity of, and run a background check on, the wrong individual." *Id*. Whereas, if the straw disclosed they were buying the gun for another, it means "the sale…could not have gone forward." *Id*. After all, "[t]he principal purpose of the federal gun control legislation [is] to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S 814, 824 (1974) (cleaned up).

The term "acquisition" is broader than the term "purchase" and "does not focus on 'legal title' … [but] [i]nstead the term signifies 'coming into possession, control, or power of disposal, as the actual buyer in a straw purchase does.'" *Abramski*, 573 U.S. at 184 (cleaned up); *see also*

---

[2] Similarly, 18 U.S.C. § 924(a)(1)(A) "prohibits 'knowingly mak[ing] any false statement ... with respect to the information required by this chapter to be kept in the records' of a federally licensed dealer." *Abramski v. United States*, 573 U.S. 169, 191 (2014) (quoting § 924(a)(1)(A)). Unlike § 922(a)(6), Section 922(a)(1)(A) does not require the statement to be material and requires the false statement to relate to information mandated to be kept in the dealer's records.

*Huddleston*, 415 U.S. at 820 ("There is no intimation here that title or ownership would be necessary for possession, or control, or disposal power, and there is nothing else in the statute that justifies the imposition of that gloss.").

The misrepresentation of the actual buyer in this case is relevant and material.  In *Abramski*, the Court determined that the same question ("are you the actual transferee/buyer(?)") is relevant to the lawfulness of a gun sale because "the firearms law contemplates that the dealer will not check the fictitious purchaser's but instead the true purchaser's identity and eligibility for gun ownership."  *Abramski*, 573 U.S. at 188.  By concealing the actual buyer, Abramski "thwarted application of essentially all of the firearms law's requirements.  We can hardly think of a misrepresentation any more material to a sale's legality."  *Id.* at 188-89.

Moreover, the law does not require that the person receiving the firearm be prohibited pursuant to 18 U.S.C. section 922(g).  *Abramski*, 573 U.S. at 188-89 (Defendant's misstatements prevented dealer, as principal law enforcement agent under federal gun law, from insisting that true buyer appear in person, show photo ID, and submit to background check, and nothing in the statute suggested that legal duties could be waived merely because actual buyer was eligible to own a gun).  After all, keeping firearms out of the hands of criminals is not § 922's only goal:  The statute's record-keeping provisions are also designed to aid law enforcement in the investigation of crime.  *Abramski*, 573 U.S. at 190.

"Section 2 prohibits aiding and abetting [a straw purchase] and makes an aider and abetter 'punishable as a principal.'"  *United States v. Abfalter*, 340 F.3d 646, 653 (8th Cir. 2003).  The traditional elements the Government must prove for aiding and abetting are: "(1) the defendant associated [himself] with the unlawful venture; (2) the defendant participated in something [he] wished to bring about; and (3) the defendant sought by [his] actions to make it succeed."  *United*

*States v. Ellefson*, 419 F.3d 859, 863 (8th Cir. 2005).

More specifically, for straw purchase prosecutions under Section 2, the Government is not required to prove that the Defendant knew that codefendant Hooks would lie about a specific question. Instead, the Government's burden is "to prove only that [Defendant Carter] knew that [his mother] would do something to misrepresent herself as the actual purchaser during the FFL transaction *and* that he encouraged her to do so." *United States v. Gearheart*, 2023 WL 5925541, at *8 (W.D.Va. Sept. 12, 2023); *see also United States v. Fields*, 977 F.3d 358, 364 (5th Cir. 2020) ("[T]o effect a straw purchase, it is unnecessary that a defendant expressly know that a straw purchaser must falsify specific portions of a Form 4473."); *United States v. Shorty*, 741 F.3d 961, 970 (9th Cir. 2013) ("The lack of evidence that [the accomplice] knew that [the principal] would have to falsely claim to be the 'actual buyer' of the guns on a Form 4473 or that [the accomplice] instructed her to do so is not fatal to the government's case; it is enough that he encouraged her to represent herself as the 'actual buyer' and that, in order to do so, she was required to lie on the forms."); *United States v. Soto*, 539 F.3d 191, 195 (3d Cir. 2008) ("Soto does not cite to any case which holds that to be convicted of aiding and abetting [a straw purchase], the government must offer proof that the defendant expressly knew that the 'straw purchaser' was falsely certifying to a specific question on the 4473 form, and that he specifically instructed his 'straw purchaser' to lie to that particular question.").

Although mere association between individuals accused of aiding and abetting is insufficient, "jurors can be assumed to know that criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences." *Id.*; *see also Abramski*, 573 U.S. at 180 (noting that a principal may "conscript[] a loyal friend or family member" to assist with the straw purchase). Because the "federally licensed

firearms dealer" is "the focus of the federal scheme" in controlling access to weapons, the Defendant's decision to choose to conspire with a friend and employee of Piazza Jewelry and Pawn, codefendant Carr, ensured that the Defendant's plan succeeded. *See*, *e.g.*, *Huddleston v. United States*, 415 U.S 814, 825 (1974) (Section 922(a)(6) applicable to pawnshops); *United States v. Blankenship*, 2016 WL 4030943, at *1 (S.D.W.Va. July 26, 2016) ("[W]here a licensed dealer *is* knowingly complicit in a straw purchase, the dealer's participation makes it much more likely, indeed ensures, that the illegal transaction will occur as planned.").

### 2. Conspiracy to make false statements in the acquisition of a firearm

The Defendant is also charged with violating 18 U.S.C. § 371, which provides in pertinent part that it shall be unlawful for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy[.]" The Government must establish: "(1) there was a conspiracy with an illegal purpose, (2) the defendant knew about the conspiracy, and (3) the defendant knowingly became a part of it." *United States v. White*, 241 F.3d 1015, 1022 (8th Cir. 2001). Aiding and abetting family members and friends to make a false statement in the acquisition of a firearm constitutes a violation of Section 371. *Abfalter*, 340 F.3d at 654 ("The conspiracy count laid in the indictment was for conspiring to commit an offense against the United States in violation of § 371, and the making of false statements constitutes an offense.").

### B. Expert Testimony

The United States has previously noticed the expert testimony of Mr. Ken Nix, retired digital forensic examiner, and Mr. Edward Darabcsek, firearm and tool mark examiner. Dkt. #154. Under Federal Rules of Evidence, Rule 702, a qualified witness may testify as an expert "[i]f

scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The rule is one of inclusion, not exclusion. *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298 (8th Cir. 1997). Expert testimony must be based on sufficient facts, be the product of reliable principles and methods, and the reliable application of those principles and methods to the facts. Fed. R. Evid. 702.

District courts are given "wide latitude" in determining whether expert testimony has the requisite reliability to be admitted. *First Union Nat. Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005). This decision will not be disturbed unless clearly abused. *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006); *United States v. Hughes*, 15 F.3d 798, 800 (8th Cir. 1994).

The previously noticed testimony in this case will assist the trial of fact, and is the product of sufficient facts, reliable principles and methods, and the reliable application of those principles and methods to the facts. Courts have allowed law enforcement witnesses to testify as experts regarding a variety of similar subjects, including, but not limited to cell phone data (*United States v. Geddes*, 844 F.3d 983 (8th Cir. 2017), and firearms (*United States v. Spight*, 817 F.3d 1099, 1103 (8th Cir. 2016)).

This Court should allow the noticed expert testimony.

**C. Motions in *Limine***

    **1. Government's First Motion in Limine to Permit Limited Testimony of Investigatory Background.**

The United States seeks permission to put on limited testimony of the investigatory background involving the murder of Ms. Mason that gave rise to this straw purchase case. The murder of the Defendant's pregnant 20-year-old girlfriend, Sarah Mason, on Halloween Night 2017 in the kitchen of the home that they shared led to the discovery of the straw purchase in this case. Ms. Mason's Glock 42 fell out of her pocket after medical responders arrived on scene.

Investigators ruled out her gun as the murder weapon (she was shot in the back of the head) but learned that another gun had also been in the house, an HK VP9. That gun has yet to be recovered and cannot be ruled out as the murder weapon.

To aid the jury in its understanding how and why the investigation into this straw purchase arose, the Government intends to present brief evidence regarding:

- That the police responded to an emergency call at the Boswell residence;

- The discovery of Ms. Mason's body and the recovery of the Glock 42 from her pocket;

- The recovery of the Glock gun case and a July 14, 2017 receipt for the sale of Ms. Mason's Glock 42 and the Defendant's HK VP9 from Piazza Jewelry and Pawn in the master bedroom of the home that the Defendant and Ms. Mason shared;

- That investigators never recovered the HK VP9, that it was not in codefendant Hooks' possession, and that it was last known to be in the Defendant's possession.[3]

The Government intends to limit the testimony to background material that initiated the investigation into the straw purchase and evidence found in the shared residence tying the Defendant to the straw purchase. Importantly, the Government does not intend to introduce evidence implicating the Defendant in Ms. Mason's murder by, for example, ballistically tying the Defendant or his gun, the HK VP9, to the murder or excluding Ms. Mason's gun as the murder weapon. Nor does the Government intend to offer bloody crime scene evidence, that Ms. Mason

---

[3] To the extent that any background investigation testimony requires soliciting hearsay, "[a]n out of court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way." *United States v. Brown*, 560 F.3d 754, 764 (8th Cir. 2009).

was pregnant when she was killed, or that Ms. Mason and Defendant had been fighting, and Ms. Mason was preparing to leave Defendant when she was killed.

"The admissibility of testimony proffered to explain the background of an investigation is [] evaluated under Federal Rule of Evidence 401 to determine its relevance and under Federal Rule of Evidence 403 to determine whether the testimony's probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Johnson*, 934 F.2d 936, 942 (8th Cir. 1991). "Although relevant evidence is inherently prejudicial, the balance under Rule 403 generally should be struck in favor of admission." *Id*. at 942-43. "[A]lthough references to other crimes generally are inadmissible, the prosecution is entitled to explain the circumstances surrounding the investigation and arrest of a defendant." *United States v. Harris*, 956 F.2d 177, 180 (8th Cir. 1992).

Undoubtedly, the background investigation evidence is damaging to the Defendant because this case begins with the murder of a woman who had a handgun on her she was not allowed to have in a home where the Defendant kept his gun that he was not allowed to have. Even so, however, "[a] litigant's evidence is not prejudicial simply because it is damaging to his opponent's case." *Bilal v. Lockhart*, 993 F.2d 643, 645 (8th Cir. 1993); *Davis*, 449 F.3d at 846 ("Evidence is not unfairly prejudicial merely because it hurts a party's case.") (cleaned up).

Without the proper context to aid the jury in explaining how and why this particular crime came to the Government's attention and in explaining the evidence found at the murder scene, the jury may impermissibly fill the informational void in a manner that is prejudicial to the Government. Under Rule 401, the following facts are relevant to show that the guns "purchased" by codefendant Hooks were in fact intended for Defendant Carter and Ms. Mason:

- investigators found the Glock 42 purchased by the Defendant's mother on Ms. Mason;

- they found the gun case and receipts for both the HK and Glock 42 in the master bedroom of the home that the couple shared;

- the HK remains missing though it was last known to be in the Defendant's possession;

- the investigation did not reveal Codefendant Hooks' to have either gun in her possession after police began investigating this crime on October 31, 2017.

Moreover, evidence that Ms. Mason is deceased and unavailable is necessary to fill the informational void as to why she is uncharged and/or unavailable as a witness.

Evidence is admissible if it is relevant, except as otherwise provided by the Constitution, a statute, or the rules of evidence.  *United States v. Johnson*, 737 F.3d 522, 525 (8th Cir. 2013), citing *United States v. Holmes*, 413 F.3d 770, 773 (8th Cir. 2005).  "Evidence is relevant so long as it has 'any tendency,' however slight, 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.*, (quoting Fed. R.Evid. 401).

The evidence seized from the residence is highly relevant to "any fact of consequence." Specifically, the presence of the Glock 42 on Ms. Mason's person is probative of her possession of the firearm and tends to prove the firearm was purchased for Ms. Mason, not codefendant Hooks.  The presence of the box for the Glock 42, in the residence that Defendant and Ms. Mason shared, which contained paperwork for the purchase of the Glock 42 and the HK VP9 also tends to prove that Ms. Mason and Defendant, not codefendant Hooks, possessed the firearms.  These facts have a strong tendency to prove that unlike her representations on the 4473, codefendant Hooks was not the intended possessor of the firearms.

Further, where, as here, the Government seeks to introduce brief evidence to aid a jury's understanding of why an investigation was undertaken and to tie the Defendant to the straw

purchase evidence found during the homicide investigation, such evidence has historically been admitted as more probative than prejudicial under Rule 403. *See*, *e.g.*, *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984) (in gun case, allowing government to "establish that [defendant] had been arrested in the course of a drug raid" because "a jury is entitled to know the circumstances and background of a criminal charge" and "cannot be expected to make its decision in a void- without knowledge of the time, place, and circumstances of the acts which form the basis of the charge"); *United States v. Savage*, 863 F.2d 595, 599-600 (8th Cir. 1988) (in gun case, prosecution permitted "to introduce evidence to imply that the defendant was under investigation for robbery" because the government is "entitled to give the context of the defendant's arrest and the subsequent search of his automobile"); *United States v. Johnson*, 934 F.2d 936, 942-43 (8th Cir. 1991) (in drug case, brief evidence of background investigation through testimony of two witnesses into drug operations of large drug organization where defendant acted as a go-between with federal agents deemed admissible where testimony introduced "to explain to the jury why the officers and agents began that investigation and to explain their activity regarding [the defendant's] role in that investigation"); *United States v. Watson*, 952 F.2d 982, 987 (8th Cir. 1991) (in drug trafficking case, testimony regarding informant's tip about the Defendant allowed as background investigation into reason for police investigation); *United States v. Harris*, 956 F.2d 177, 180 (8th Cir. 1992) (in drug case, no prejudice where prosecutor's comment – "police department targeted [the defendant] for arrest, in an unrelated crime" because such a comment "is relevant to explaining the basis for the police investigation of [the defendant]"); *United States v. Williams*, 971 F.2d 157, 157-58 (8th Cir. 1992) (in drug case, allowing testimony into initial investigation of defendant including use of confidential informant to purchase drugs and statement that investigators "didn't just draw the defendant's name out of a hat"); *United States v. Davis*, 449 F.3d 842, 846 (8th Cir.

2006) (in gun case, evidence of stop of third party who had just visited the defendant's home and was arrested with marijuana on him relevant and not prejudicial because of "correlation between drug dealing and weapons"); *see also United States v. White*, 13-00440-01-CR-W-DW, 2014 WL 12923335, *1 (W.D. Mo. July 14, 2014) (in prosecution for knowing possession of an unregistered shotgun and stolen firearm, holding "that the homicide and home invasion investigation of Defendant is admissible to show context and the circumstances of the crime charged in this case").

For those reasons, the Government respectfully requests that the Court allow limited testimony into the relevant investigatory background of Sarah Mason's murder and evidence found at the scene linking the Defendant to the straw purchase and providing the basis for the underlying charges.

### 2. Government's Second Motion in Limine to Admit Limited Evidence of Defendant's Probation Status That Prohibited Him From Possessing a Firearm.

At the time of the offenses, Defendant was on probation for possession of a controlled substance, a felony, in Saint Louis County Circuit Court, case no. 16SL-CR08578-01. The terms of his probation, among other things, prohibited him from possessing a firearm. Evidence is admissible if it is relevant, except as otherwise provided by the Constitution, a statute, or the rules of evidence. *Johnson*, 737 F.3d at 525, citing *Holmes*, 413 F.3d at 773. "Evidence is relevant so long as it has 'any tendency,' however slight, 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.,* (quoting Fed. R.Evid. 401).

That Defendant knew he was prohibited by the terms of his probation from possessing a firearm strongly tends to prove his intent to aid, abet, and encourage his mother to make false statements to acquire a firearm for him, and otherwise engage his coconspirators. To minimize

any potentially prejudicial impact, the United States offered Defendant a stipulation to the effect that Defendant knew he was on probation for a state offense and knew that he was prohibited from possessing a firearm.  However, should Defendant decline the stipulation, the United States may move to offer witness testimony, evidence of certified court records, Defendant's signed order of probation (acknowledging that he could not possess a firearm), and other relevant evidence.

Moreover, should Defendant not stipulate or otherwise inject the issues of the nature of the offense, or his compliance with the terms of his probation, including drug testing at trial, it is indeed relevant that he was on probation for a drug offense where ATF Form 4473 includes inquiries relative to unlawful use or addiction to controlled substances pursuant to 18 U.S.C. § 922(g)(3).  Defendant's probationary status gave him additional motives to engage a trusted ally as a straw partner.

That Defendant's knowledge of his probation status and inability to possess a firearm is intrinsic and should be admitted.  In *United States v. Young*, the Eighth Circuit affirmed the trial court's admission of evidence of the defendants' other wrongful conduct, finding that Rule 404(b) did not bar the admission of evidence of other wrongful conduct to prove the circumstances and context of the charged conspiracy.  753 F.3d 757, 770 (8th Cir. 2014).  This Court explained that Rule 404(b) applies only to extrinsic, not intrinsic, evidence. 'Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred.' 'Such evidence is admitted because the other crime evidence 'completes the story' or provides a 'total picture' of the charged crime.'  Evidence may be intrinsic if "it 'explain[s] the circumstances of' [a] charged murder conspiracy.'  Intrinsic evidence may help to fill the gaps in the jury's understanding of the crime charged. We have also determined that intrinsic evidence is "inextricably intertwined as an integral part of the immediate context of the

crime charged." . . . Consequently, intrinsic evidence includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely "completes the story" or provides context to the charged crime. *Id.* (some internal citations omitted). *See United States v. Ross*, 969 F.3d 829, 842 (8th Cir. 2020) (evidence that is inextricably intertwined with a charged offense or that provides context for a charged offense is admissible under Rule 401. It is not governed by Rule 404(b)); *United States v. Shavers*, 955 F.3d 685, 697-98 (8th Cir. 2020) (*rehg. and rehg. en banc denied*); and *United States v. Guzman*, 962 F.3d 991, 1000 (8th Cir. 2019) (*rehg. and rehg. en banc denied*).

### 3. Government's Third Motion in Limine to Permit Use of a Prior Conviction Less than Ten Years Old During Cross Examination of the Defendant.

The Government seeks to introduce evidence of the Defendant's prior convictions for felony possession of a controlled substance (2018) and felony harassment (2021).

Publicly available court records indicate that on August 9, 2018, the Defendant had his probation revoked and received a suspended execution of sentence and five years of supervised probation for possession of a controlled substance, a felony, in Saint Louis County Circuit Court, case no. 16SL-CR08578-01. The Defendant originally pled guilty in that case on May 10, 2016 and received a suspended imposition of sentence of five years' probation until his probation was revoked on August 9, 2018. Defendant's probation on this St. Louis County case prohibited him from buying weapons in 2017 and gave rise to this federal offense.

Publicly available records further indicate that on August 13, 2020, the Defendant also pled guilty to first degree harassment, a felony, in St. Louis County Circuit Court, case no. 21SL-CR01980-01. On December 13, 2021, the Court sentenced the Defendant to a suspended execution of sentence with 3 years of supervised probation. *Id.*

Rule 609(a) states, in pertinent part:

> **(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> …
>> **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant …

Because the convictions are less than ten years old and punishable by more than one year in prison, the limit on using this evidence for impeachment purposes as stated in Rule 609(b) does not apply. Moreover, here, the convictions must be admitted because their probative value outweighs the prejudicial effect because the jury will have to assess the defendant's credibility if he takes the stand. *See*, e.g., *Lewis v. Sheriffs Dept. for City of St. Louis*, 817 F.2d 465 (8th Cir. 1987) (prejudicial effect of admitting felony convictions of driving automobile without owner's permission, theft, second-degree burglary, felonious possession of burglary tools, carrying concealed weapon, and illegal possession of controlled substance which occurred within past ten years did not outweigh probative value in assessing defendant's credibility).

Under Rule 609(a), an inquiry into a prior conviction may extend to whether a prior conviction was obtained, when the conviction was obtained, and what the conviction was for. *United States v. Wesley*, 990 F.3d 360, 366 (8th Cir. 1993) (citations omitted). As a procedural matter, the United States respectfully requests that, should the Defendant testify, the Court make an explicit finding on the record that the probative value of the convictions outweighs their prejudicial effect and that the Court provide some indications of the reasons for its findings. *United States v. Walker*, 817 F.2d 461, 463 (8th Cir. 1987); *United States v. Hood*, 748 F.2d 439, 441 (8th Cir. 1984) (The better practice is for the trial court to make an on the record finding that the

test weighs in favor of, or against, the admission of the prior conviction.).

Therefore, for the reasons stated, the United States requests the Court to permit the United States to cross-examine defendant regarding his prior convictions if Defendant elects to testify at trial.

### 4.  Government's Fourth Motion in Limine to Preclude the Defendant from Introducing Evidence of the Indictment of Piazza Jewelry and Pawn in 2020.

The Court should preclude the Defendant from making any comments or introducing any evidence that Piazza Jewelry and Pawn, the pawnshop at the center of the straw purchase here, was the subject of an ATF investigation in 2019 and subsequent federal indictment.  A federal grand jury ultimately indicted three employees for unlawfully transferring firearms to convicted felons and making false statements on records required to be kept by a licensed firearms dealer. *See* Case No. 4:20-CR-00201-HEA.   The Government later dismissed the charges without prejudice in late 2021. *Id*., Dkts. 161, 164, 170.  Given that the conduct involving these employees occurred after the relevant time frame here (summer and fall 2017), any evidence about the subsequent investigation into or indictment of other employees of Piazza Jewelry and Pawn is irrelevant and prejudicial under Fed. R. Evid. 401 and 403 and will only serve to confuse the issues and the jury.

Therefore, the Government moves for an order precluding the Defendant from introducing any evidence, comments, or arguments regarding subsequent investigations into Piazza Jewelry and Pawn.

### 5.  Government's Fifth Motion in Limine to Preclude the Defendant from Seeking Jury Nullification.

The Court should preclude the Defendant from making comments or arguments, admitting evidence, or framing questions in the presence of the jury that are designed to induce jury

nullification.  While a jury can acquit a defendant for any reason supported by the evidence, it is improper for a defendant to invite nullification.  *See United States v. Escudero*, 2022 WL 17352458 *2 (D. Minn. Dec. 1, 2022) (citing *United States v. Horsman*, 114 F.3d 822, 829 (8th Cir. 1997)). After all, "this power of the jury is not a right of the defendants," and "it is not to be positively sanctioned by instructions [or arguments] . . . which would encourage a jury to acquit . . . regardless of the applicable law or proven facts."  *United States v. Sloan*, 704 F. Supp. 880, 884 (N.D. Ind. 1989).

Indeed,

> To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos. No legal system could long survive if it gave every individual the option of disregarding with impunity any law which by his personal standard was judged morally untenable.

*United States v. Wiley*, 503 F.2d 106, 107 (8th Cir. 1974). "[F]ederal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed." *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983).

Therefore, the Government moves the Court for an order precluding Defendant from making comments or arguments, admitting evidence, or framing questions to invite or provoke jury nullification.

### 6. Government's Sixth Motion in Limine to Preclude the Defendant from Commenting on the Punishment or Sentence.

The Government moves this Court to enter an order prohibiting the defendant or his attorney from commenting on the potential punishment or sentencing if the defendant is convicted.

It is black letter law that "[s]entencing is generally one of the areas barred from comment during closing arguments to the jury because the jury is supposed to be concerned solely with the determination of guilt."  75A AM.JUR.2D *Trial* § 470 (Mar. 2023 Update).  Indeed, Eighth Circuit Model Jury Instruction No. 3.12 provides that "if the defendant is found guilty, the sentence to be imposed is [the Court's] responsibility.  [The jury] may not consider punishment in any way in deciding whether the Government has proved its case beyond a reasonable doubt."  In other words, where the Court, rather than the jury imposes punishment, "the duration of the imprisonment for the crime in question is not a proper subject of comment by counsel."  75A AM.JUR.2D *Trial* § 470 (Mar. 2023 Update).

Accordingly, the Government requests that this Court enter an order precluding defense counsel from attempting to secure the jury's sympathy by commenting on the potential punishment, range of punishment, or sentencing should the Defendant be convicted.

### 7. Government's Seventh Motion in Limine to Preclude the Defendant from Relitigating Suppression Issues.

The Government respectfully requests an order prohibiting the Defendant from arguing or presenting evidence that the investigation or evidence obtained in this case was obtained illegally, improperly, or unconstitutionally.  The Defendant waived pretrial motions on September 4, 2023.  Dkt. 103.  The Defendant indicated that he had "reviewed all discovery with counsel as well as all possible pretrial motions that could be filed on his behalf" and after "multiple discussion with counsel" ultimately decided "not to file any pretrial motions."  *Id*.  Accordingly, this Court should

prohibit the Defendant from litigating any issues he could have, but decided not to, raise at the pretrial stage, much as it would prevent a litigant from relitigating any issues that were previously raised.  *See*, *e.g.*, *U.S. v. Anderson*, No. 4:13-CR-164-RWS, 2016 WL 9455346, at *1 (E.D. Mo. Feb. 12, 2016) (prohibiting defendant from relitigating issues at trial previously decided at the pretrial motion stage); *United States v. Sanders*, 196 F.3d 910, 914 (8th Cir. 1999) (upholding jury instruction that stop of vehicle and subsequent search were lawful acts where defense confused jury by casting doubt on legality of search).

Thus, the Government asks that the Court preclude the Defendant from arguing or presenting evidence regarding pretrial issues that he voluntarily and knowingly waived.

### 8. Government's Eighth Motion in Limine to Exclude Self-Serving Statements.

The Defendant has spoken with and been interviewed by law enforcement on numerous occasions and made self-serving statements.  The United States moves this Court to enter an order prohibiting the Defendant from commenting on, adducing any evidence of, cross-examining, or arguing any self-serving statements made to law enforcement and others, as such statements are inadmissible hearsay. Fed. R. Evid. 801(c). There are no recognized hearsay exceptions to permitting the Defendant to introduce such evidence, as such statements are merely self-serving statements of innocence. Such statements lack the required indicia of trustworthiness and reliability which support admission. *United States v. Woosely*, 761 F.2d 445, 449 (8th Cir. 1985).

For those reasons, the Government asks that the Court preclude the Defendant from introducing self-serving statements.

### 9. Certified Business Records Are Admissible Pursuant to Fed. R. Evid. 902 and Fed. R. Evid. 803(6).

The United States provided Defendant notice of its intent to introduce records pursuant to

Fed. R. Evid. 902(11) and 803(6) regarding the following previously produced records: (1) Regions Bank; (2) St. John Bank and Trust; and (3) FCFS MO, Inc. d/b/a Piazza Jewelry and Pawn. Records may be admitted as business records, pursuant to Fed. R. Evid. 902(11), which provides that "Certified Domestic Records of a Regularly Conducted Activity" are self-authenticating and do not require witness testimony if the "original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." *Id.*; *see United States v. Azure*, 801 F.2d 336, 342 (8th Cir. 1986) ("Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record – and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them."); Fed. R.Evid. 902(11); *United States v. Adefehinti*, 510 F. 3d 319, 328 (D.C. Cir. 2007) (notice required to permit opposing party to challenge documents offered pursuant to Rule 902(11)).

The "custodian" or "qualified person" making the Rule 902(11) certification, or testifying at trial, does not have to be the person who created the records or even know who created the records. *United States v. Franks*, 939 F.2d 600, 601-02 (8th Cir. 1991). Nor is the custodian or qualified person required to have been involved in the maintenance and storage of the records. *Id.* A wealth of Eighth Circuit precedent has acknowledged the admissibility of relevant records pursuant to Fed. R. Evid. 902, and recognizing that admission of records pursuant to a 902 certificate does not create any Confrontation Clause issues. *See, e.g.*, *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012) (citing *United States v. Yeley–Davis*, 632 F.3d 673, 680 (10th Cir.2011) ("[C]ertificates of authenticity presented under Rule 902(11) are not testimonial."); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (holding that a "written certification

attesting to the authenticity of a business record" was non-testimonial under *Crawford* ); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (holding that "a routine certification by the custodian of a domestic public record . . . [is] not testimonial in nature"); *cf. United States v. Watson*, 650 F.3d 1084, 1090 (8th Cir. 2011)).

Here, the United States has satisfied the Notice requirements of 902(11). Further, the 902 certificates included with the respective exhibits each reflect that the records contained comply with the provisions of Fed. R. Evid. 803(6) in that: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and (C) making the record was a regular practice of that activity. Because the records the United States has identified above comply with the provisions of Fed. R. Evid. 902 and Fed. R. Evid. 803(6), the United States respectfully requests that this Court admit those exhibits pursuant to 902(11). Alternatively, the United States may call a witness with knowledge to admit any of said records pursuant to Fed. R. Evid. 803(6).

### 10. Authentication and Admission of Social Media Records

A witness with knowledge will identify Defendant's social media, including his posting of a photograph of the HK VP9 with the Inforce flashlight and the language "She is so beautiful … #hk #VPG #inforce #9mm." The witness has knowledge of Defendant's account user name depicted on the image, and there is other circumstantial evidence that strongly links Defendant to the account and posting(s).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Sufficient evidence may include the testimony of a witness

with knowledge, or "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1); 901(b)(4). "The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be." *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010). Authentication may be established by circumstantial evidence. *Kaplan v. Mayo Clinic*, 653 F.3d 720, 725-26 (8th Cir. 2011).

To authenticate evidence, a party must clear only a low bar. *United States v. Perez*, 61 F.4th 623, 626 (2023), citing *United States v. Lamm*, 5 F.4th 942, 947 (8th Cir. 2021). "The proponent must produce evidence sufficient to support a finding that the evidence is what the proponent claims it is." *Perez*, 61 F.4th at 626, quoting Fed. R. Evid. 901(a). A party may authenticate social media evidence with circumstantial evidence that adequately links a particular person to the social media account. *Id.*, at 626, citing *Lamm*, 5 F.4th at 948. "Conclusive proof of authenticity is not required." *Id.*, quoting *United States v. Browne*, 835 F.3d 403, 412 (3rd Cir. 2016). "[O]nce the threshold requirement is met[,] any question as to whether the evidence is authentic is for the jury." *Perez*, 61 F.4th at 626, quoting *Lamm*, 5 F.4th at 947. The *Perez* court found that enough circumstantial evidence existed to provide a sufficient basis to permit the jury to determine whether the account belonged to the defendant. *Id.* at 627.

*Lamm* considered a Seventh Circuit opinion in arriving and its findings. In *United States v. Barber*, the court held that "[t]o authenticate Facebook records and messages, the Government need[s] only to produce evidence sufficient to support a finding that the account belong[s] to [the defendant] and the linked messages were actually sent and received by him." *United States v. Barber*, 937 F.3d 965, 970 (7th Cir. 2019). In that case, the defendant operated an account under a different name. *Id.* at 969. The Government sought to authenticate the Facebook evidence by

providing testimony from a witness who conversed with the defendant on the secondary account, as well as the fact that the defendant's personal account and secondary account shared mutual friends, the secondary account had images of the defendant, and the same cell phone number was associated with both of the accounts. *Id.* at 969-70.

For the reasons stated herein, the United States moves for the admission of Defendant's posting of the photograph of the HK VP9, related comments, and other social media that will be adequately authenticated.

## **CONCLUSION**

Wherefore, the Government respectfully requests that the Court permit the United States to introduce evidence involving the investigatory background and the reasons behind the initiation of the straw purchase investigation (Motion in Limine No. 1), permit the United States to introduce limited evidence regarding Defendant's probation status prohibiting possession of a firearm (Motion in Limine 2), permit the United States to introduce prior convictions less than ten years old if the Defendant takes the stand (Motion in Limine 3), preclude the Defendant from introducing evidence of the 2020 federal indictment of employees of Piazza Jewelry and Pawn (Motion in Limine No. 4), preclude the Defendant from making jury nullification arguments (Motion in Limine No. 5), preclude the Defendant from commenting on the punishment or sentence (Motion in Limine No. 6), preclude the Defendant from litigating suppression issues (Motion in Limine No. 7),  preclude the Defendant from introducing self-serving statements (Motion in Limine No. 8), permit the United States to introduce self-authenticating records of regularly conducted activity (Motion in Limine No. 9), and permit the United States to introduce evidence of social media records (Motion in Limine No. 10).

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

 /s/ *Michael A. Reilly*
Michael A. Reilly, #43908MO
Nino Przulj, #68334MO
Assistant United States Attorneys
111 S. 10th Street, 20th Floor
St. Louis, Missouri   63102
(314) 539-2178


## CERTIFICATE OF SERVICE


I hereby certify that on May 17, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.


/s/ *Michael A. Reilly*