UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-cr-00313-HEA |
| DARIUS CARTER, | ) ) ) |
| Defendant. | ) |

**UNITED STATES' OBJECTION TO PRESENTENCE INVESTIGATION REPORT, AND MOTION FOR APPLICATION OF CROSS REFERENCE AND UPWARD VARIANCE**

Comes now the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Nino Przulj and Michael A. Reilly, Assistant United States Attorneys for said District, and respectfully files its objection to the Presentence Investigation Report (PSR), R.Doc.193.

## I.   INTRODUCTION

Defendant was found guilty of aiding and abetting false statements in the straw purchase of a firearm, in violation of 18 U.S.C. §§ 2 and 922(a)(6), and conspiracy to make false statements in the straw purchase of firearm, in violation of 18 U.S.C. § 371. *See* R.Doc.1, 180, 184. The disclosure PSR concluded the base offense level and total offense level is 12, and declined to apply the cross reference to Chapter 2 (Offenses Against the Person) in U.S.S.G. § 2K2.1(c)(1)(B). R.Doc193, ¶¶ 25-33.[1]   At sentencing the Government will prove by a preponderance of the evidence that Defendant used the HK 9 mm pistol acquired by false statements on July 14, 2017,

---

[1] The undersigned has conferred with the U.S. Probation Office regarding the basis for this objection.

1

to murder Sarah Mason on October 31, 2017.  The cross reference from U.S.S.G. § 2K2.1(c)(1)(B) to § 2A1.1(a) applies to make the base offense level 43, thereby rendering the Defendant's possible sentence for Count One the ten-year statutory maximum and for Count Two the five-year statutory maximum.  Given the nature of the crime at issue, the Government seeks to stack the statutory maximum sentences and to ask this Court to impose a 15-year term of imprisonment.

An upward variance is also warranted pursuant to the factors in 18 U.S.C. § 3553(a).  The nature and circumstances of the offense and defendant's history and characteristics heavily support a substantial upward variance.  Defendant's long pattern of abusive and controlling behavior toward women neither began nor ended with the abuse and murder of Sarah Mason and their unborn child.

## II.    FACTUAL SUMMARY

### A. The victim, seven months pregnant, was murdered by a gunshot wound consistent with the HK VP9 obtained under false pretenses by the Defendant months earlier.

On Halloween night, October 31, 2017, sometime after 7:00 pm, the St. John Police Department responded to 3566 Boswell Avenue where they found 20-year-old Sarah Mason, then seven months pregnant with Carter's child, dead from what was later determined to be a gunshot wound to the back of the head.  Although the initial call was for a sick case, the investigation transitioned to a sudden death under suspicious circumstances.  The evolving investigation, including the autopsy, established that Ms. Mason and their unborn child were murdered.

While investigating her murder, the Bureau of Alcohol, Tobacco, and Firearms (ATF), along with local agencies, also began a related investigation into a firearm that fell out of Ms. Mason's right pocket when medical examiners arrived and moved her body.  After ruling out her gun, a Glock 42 .380 caliber firearm (serial no. ACNF628), as the murder weapon, investigators

2

learned that Defendant Carter's mother, codefendant Lynn Hooks, bought it a few months earlier. During that same transaction on July 14, 2017, at Piazza Jewelry and Pawn, codefendant Hooks also bought an HK VP9 9mm firearm (serial no. 224-021754) for Defendant Carter. The jury found beyond a reasonable doubt that Defendant Carter acquired the HK VP9 firearm by false statements. R.Doc.184. Ballistic analysis revealed that Mason was murdered with a 9mm pistol, with a polygonal twist consistent with an HK make pistol.

### B. On the day of her murder, Mason decided to leave Defendant Carter and break off their relationship.

The ensuing investigation revealed that Mason and Defendant Carter were experiencing domestic issues due to Carter's infidelity and that Mason broke off the relationship several hours before her murder with the intent to leave Carter. Carter, in turn, was angry that Mason had looked at his phone (SMS messages from Carter to Mason on October 31, 2017 include: (1) "I'm done talking to you"; (2) "I'm just done buddy you should have never went through my phone"). On the day of her murder, Mason declined to give Defendant Carter a ride home after his work shift ended. As one of her last acts, and consistent with their text message conversations that day, Mason wrote a letter to Carter stating, among other things, "Darius I don't deserve to be treated the way I am by you … I know I deserve better & shouldnt feel scared to ask who youre talking to cause I know you will just get pissed … It makes me sick to think our daughter will be here in less than 2 months and youre out there talking and reaching out to other girls … im not what you want."

### C. Defendant was in the area of the murder scene during the relevant time frame.

Because he no longer had a ride from Mason, Defendant Carter had to arrange for a ride from a colleague back to the Boswell residence that he shared with Mason. Carter arrived that day around 5:30 pm. Historic cell tower data, although not precision location information, confirms Carter's presence in the area. Defendant Carter's cell phone records contain a significant gap in

3

outgoing calls to Mason after Carter arrived home. One inference to be drawn from this gap is that Carter confronted Mason and killed her during that timeframe.

Defendant Carter later contacted neighbors, claiming he was trying to locate Mason. Defendant Carter told one neighbor that he and Mason were arguing and were going to breakup. The neighbor found it unusual that during the encounter Defendant Carter tried to shake hands by offering his left hand while hiding his right hand in his pocket. The inference to be drawn from the evidence is that Carter had already killed Mason by this point and hoped to convince a neighbor to break down the back door and "discover" her body.

### D.  Defendant Carter's prized HK VP9 pistol disappeared after the murder.

Significantly, Defendant Carter's highly prized HK VP9, an object of the straw purchase, disappeared after the murder. Carter's possession of the firearm is firmly established by trial testimony, text messages, an Instagram post, and a receipt recovered from the Boswell residence. Trial evidence established that Defendant Carter prized this pistol ("She is so beautiful … #hk #VPG #inforce #9mm" (Government's Exh. 3)), and as of September 2017 was seeking a holster and new battery for the pistol ("I need your homie to make me a holster where can I go to get a battery for my light to" (Government's Exh. 4b)).

The evidence will establish that the weight and polygonal twist of the bullet removed from Mason's head was consistent with having been fired out of an HK model 9 mm firearm. The United States acknowledges that other firearms manufacturers also utilize polygonal rifling. Nonetheless, the weight of the bullet and rifling characteristics are consistent with the missing HK VP9.

The weight of the evidence established Defendant Carter's affinity for the HK VP9 pistol, and that absent an intervening event, Carter intended to keep his prized pistol. Despite an extensive lengthy investigation, that included use of a "wanted" to locate the pistol, investigators have been

4

unable to locate Defendant Carter's HK VP9. Based upon the totality of the record, it is reasonable for the Court to infer and find, by a preponderance of the evidence, that Defendant Carter disposed of the firearm so it could not later be used as evidence against him.

### E. Carter's History and Characteristics

Facts set forth in the PSR, and facts to be established at sentencing will be probative of Defendant Carter's history and characteristics and will establish, among other things, Defendant Carter's pattern of abusive, threatening, and controlling behavior toward women.

### III.   LEGAL ANALYSIS

### A. The cross reference to U.S.S.G. § 2A1.1(a) applies.

The guideline for a violation of 18 U.S.C. § 922(a)(6) is found in U.S.S.G. § 2K2.1. R.Doc193, ¶¶ 25-33. Regarding the application of the cross reference, U.S.S.G. § 2K2.1(c)(1) states that

> If the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense …, apply—
>
> (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

The guideline cross reference looks to "the most analogous" homicide offense guidelines, not specific statutory provisions. *United States v. Jawher*, 85 F.4th 868, 872, 873 (8th Cir. 2023). There is no basis to conclude the cross reference requires attention to jurisdictional matters as would be the case for an actual federal homicide charge. *Id.* An appellate court reviews the district court's determination as to the "most analogous" homicide guideline deferentially, as a factual determination. *Id.* (internal citations omitted).

U.S.S.G. § 2A1.1(a) provides a base offense level of 43 where the district court finds by a

5

preponderance of the evidence that the offense constitutes first degree murder. U.S.S.G. § 2A1.1(a). First-degree murder means "an unlawful killing with malice aforethought, proof of premeditation and deliberation." Malice aforethought means "an intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life." Eighth Circuit Manual of Model Jury Instructions (Criminal) § 6.18.1111A-1 (2023); *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021).

For sentencing purposes, the district court "need only find facts … by a preponderance of the evidence." *United States v. Clark*, 999 F.3d 1095, 1097 (8th Cir. 2021), reh'g denied (July 21, 2021), *quoting United States v. Mann*, 701 F.3d 274, 309 (8th Cir. 2012). *See United States v. Jenkins*, 792 F.3d 931, 935 (8th Cir. 2015); *Edger v. United States*, No. 4:20 CV 397 CDP, 2023 WL 2327647 at *15 (E.D. Mo. March 2, 2023) ("Neither a conviction nor government's proof beyond a reasonable doubt is required for me to find sentencing facts for enhancement under § 2K2.1(c)(1)(B)." (internal citations omitted)).

18 U.S.C. § 3661 ("§ 3661") allows that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The sentencing court may consider any relevant information even if it would be inadmissible at trial, "provided that the information has sufficient indicia of reliability to support its probably accuracy." *Clark*, 999 F.3d at 1097, quoting U.S.S.G. § 6A1.3(a). Hearsay may be considered in sentencing where it "has sufficient indicia of reliability," U.S.S.G. § 6A1.3(a), including where it is corroborated by additional allegations and testimony, *see, e.g., United States v. Richart*, 662 F.3d 1037, 1057 (8th Cir. 2011); *United States v. Schlosser*, 558 F.3d 736, 740 (8th Cir. 2009).

6

Based upon the facts and circumstances set forth above, derived from the trial record, and to be presented at sentencing, there is a strong basis to find that Defendant Carter used and possessed the HK VP9 acquired in the offense of conviction to murder Mason, resulting in a base offense level of 43 after application of the cross reference. Although not legally required, Defendant Carter had a clear motive to murder Mason, because she was leaving him and he was angry at her for going through his phone. He was present at the scene of the murder during the relevant time frame. Mason died from a gunshot wound to the back of her head. Shooting someone in the back of the head is consistent with malice aforethought, demonstrating an intent, at the time of a killing, willfully to take the life of a human being. In this case, Mason and their unborn baby.

The projectile removed from Mason's head was fired from a 9mm pistol, with a polygonal twist consistent with an HK VP9 pistol. Thereafter, Defendant Carter's highly prized HK VP9 pistol disappeared and has never been found despite extensive investigation. Under all of these circumstances, the basis for the application of the cross reference is established well beyond a preponderance of the evidence.

**B.   An upward variance is also warranted pursuant § 3553(a).**

The nature and circumstances of the offense and defendant's history and characteristics support a substantial upward variance. Defendant's long pattern of abusive and controlling behavior toward women did not begin or end with the abuse and murder of Mason and their unborn child. The United States will rely on the information presented in the PSR, ¶¶ 7-18 and 36-43, and other information to be presented at sentencing.

The Court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

7

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct; [and]

        (C) to protect the public from further crimes of the defendant;

\* \* \*

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for … the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines … issued by the Sentencing Commission….

The nature and circumstances of the offense, including the murder of Sarah Mason and their unborn child support an upward variance. Defendant's history and characteristics, including his pattern of abusive and controlling behavior toward women, also support an upward variance. *See United States v. Bryant*, 913 F.3d 783, 788-89 (8th Cir. 2019) (cross-referencing kidnapping conviction to attempted murder sentence and holding that sentence not unreasonable because of the circumstances of the kidnapping and defendant's long history of controlling and abusive behavior towards women). In *United States v. Long*, the court held a 21-year-upward variance was not substantively unreasonable in a drug and firearm possession case, because defendant's history and characteristics called for a variance. *United States v. Long*, 906 F.3d 720, 727-28 (8th Cir. 2018). If a district court deviates from the advisory Guidelines range, it must "give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Long*, 906 F.3d at 727.

8

The Government intends to present evidence of Defendant Carter's pattern of abusive behavior toward women, including toward Mason. The evidence will also include Defendant's abusive conduct toward other women, both before and after his relationship with Mason.

## IV.   CONCLUSION

Wherefore, the Government respectfully requests that the Court sustain the objection to the PSR, apply the cross reference, find the base offense level to be 43, and apply an upward variance pursuant to 18 U.S.C. § 3553(a).

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

 /s/ *Michael A. Reilly*
Michael A. Reilly, #43908MO
Nino Przulj, #68334MO
Assistant United States Attorneys
111 S. 10th Street, 20th Floor
St. Louis, Missouri   63102
(314) 539-2178

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

/s/ *Michael A. Reilly*